E-FILED
Friday, 25 June, 2021  04:50:14 PM
Clerk, U.S. District Court, ILCD

72483-61-121

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| CITY OF GILMAN, a Municipal Corporation, and BRENNAN SAYLER, an Individual, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES plaintiff, West Bend Mutual Insurance Company, by its attorneys, McKenna Storer, and for its Complaint for Declaratory Judgment against the City of Gilman, a municipal corporation, and Brennan Sayler, an individual, states as follows:

**The Parties**

1.     Plaintiff, West Bend Mutual Insurance Company ("West Bend") is a mutual insurance company organized under the laws of the State of Wisconsin, with its principal place of business in the State of Wisconsin, and is authorized to issue policies of insurance in the State of Illinois.  West Bend is a citizen of Wisconsin.

2.     Defendant, City of Gilman, is a municipal corporation in the County of Iroquois, State of Illinois, with its principal place of business in the State of Illinois.  Gilman is a citizen of Illinois.

3.     Defendant, Brennan Sayler ("Sayler"), is an individual residing in the State of Illinois, with her principal residence in the State of Illinois, and is the plaintiff in the underlying lawsuit from which this declaratory judgment arises.  Sayler is named as a defendant herein as a necessary party, and to bind her to this Court's jurisdiction.  Sayler is a citizen of Illinois.

**Jurisdiction and Venue**

4.      Jurisdiction is proper under 28 USC §1332(a)(1) since this is an action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

5.      Venue is proper in this Court pursuant to 28 USC §1391(b)(1) because all of the defendants reside in Illinois, and at least one defendant resides in this district.

## Factual Background

6.      Sayler filed a lawsuit against Iroquois Paving Corp. ("Iroquois Paving"), Piggush Engineering, Inc.("Piggush") and Gilman, Case No. 19L12, in the Circuit Court for the Twenty-First Judicial Circuit, Iroquois County, Watseka, Illinois, (hereinafter, "Underlying Complaint.") (Ex. A, First Underlying Complaint).

7.      The Underlying Complaint alleged that the Village of Gilman began a sanitary sewer project named 2014 E. Second Street Sanitary Sewer Project in April of 2014, and the purpose of the sanitary sewer project was the construction of a municipal sewer/water facility on Second Street during the construction of the sewer/water project (hereinafter, "Sewer Project"). The existing 511 sanitary sewer service was allegedly not connected to the new Second Street 8 inch sanitary sewer at 511 East Second Street. The repair/construction was completed in the sanitary sewer on May 21, 2014.  Thereafter, sanitary water and/or raw sewage allegedly was caused to back up into Sayler's basement, causing Sayler financial, physical and emotional distress.

8.      Iroquois Paving is a named insured of West Bend Mutual Insurance Company under its Commercial General Liability Policy, No. CPB0576288 12, with effective dates of December 31, 2013 through December 31, 2014 (hereinafter "Policy"). (Ex. B, the Policy).

9.      Gilman tendered defense of the Underlying Complaint to West Bend, claiming to be an additional insured of Iroquois Paving's CGL policy.

10.     Gilman was not a named insured under the West Bend CGL policy, nor was Gilman named anywhere in the policy as an insured.

11.     The Gilman tender was denied because (1) Gilman does not qualify as an additional insured; and (2) Gilman is not entitled to coverage because of the policy's completed operations provision.

**The West Bend Mutual Insurance Company Policy**

12.     The CGL policy issued to Iroquois by West Bend contained the following endorsement:

> **ADDITIONAL INSURED-CONTRACTOR'S BLANKET Endorsement**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A.  **WHO IS AN INSURED** (Section II) is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.
>
> The written contract or written agreement must be:
>
> 1.  Currently in effect or becoming effective during the term of this policy; and
>
> 2.  Executed prior to the "bodily injury," "property damage," "personal injury and advertising injury."
>
> B.  The insurance provided to the additional insured is limited as follows:
>
> * * *
>
> 3.  Except when required by written contract or written agreement, the coverage provided to the additional insured by this endorsement does not apply to:
>
> A.  "Bodily injury" or "property damage" occurring after:

(1)      all work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured at the site of the covered operations has been completed; or

(2)      That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

13.      On or about April 30, 2014, Iroquois Paving and Gilman entered into a written contract related to the Sewer Project (hereinafter, "Written Contract"), and a copy of the Written Contract is attached hereto. (Ex. C, Written Contract).

14.      Section XXI of the Written Contract states:

The Contractor [Iroquois] shall be responsible for providing liability insurance to protect the City of Gilman…from all suits and claims made against this project, its design or implementation.

15.      The Written Contract did not require that Gilman be added as an additional insured on the West Bend policy.

16.      In addition, the Written Contract did not require "completed operations" coverage.

17.      Accordingly, West Bend properly does not owe Gilman a duty to defend or indemnify Gilman in the Underlying Complaint.

18.      A case of actual controversy exists in connection with the parties' rights and obligations under the policy of insurance issued by West Bend to Iroquois and, pursuant to 28 USC §2201(a), this Court has jurisdiction to declare the rights and legal obligations of any interested party seeking relief.

**COUNT I**
**THE CITY OF GILMAN IS NOT AN ADDITIONAL**
**INSURED UNDER A WRITTEN CONTRACT**

19.      Plaintiff repeats and re-alleges paragraphs 1-18 as though fully set forth herein.

4

20.     The West Bend Mutual Insurance Company ADDITIONAL INSURED-CONTRACTOR'S BLANKET, Section A, WHO IS AN INSURED, limits an Additional Insured to any person or organization required to be added as an additional insured on the policy.

21.     The Written Contract between Gilman and Iroquois did not obligate Iroquois to name Gilman as an additional insured on the West Bend policy.

22.     Accordingly, Gilman is not an additional insured under the West Bend policy.

23.     Therefore, there is no coverage under the West Bend Policy issued to Iroquois, and West Bend does not owe a duty to defend or indemnity Gilman in the Underlying Lawsuit.

**COUNT II
THE CITY OF GILMAN IS NOT AN ADDITIONAL INSURED
FOR COMPLETED OPERATIONS**

24.     Plaintiff repeats and re-alleges paragraphs 1 through 23 as though fully set forth herein.

25.     West Bend's ADDITIONAL INSURED – CONTRACTOR'S BLANKET only applied to "bodily injury" or "property damage" occurring after "all work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured at the site of the covered operations has been completed when required by a written contract or written agreement.

26.     The Underlying Complaint alleges that all alleged injuries occurred after all work had been completed on the project.

27.     The Written Agreement between Gilman and Iroquois did not require that Iroquois obtain "completed operations" coverage for Gilman.

28.     Therefore, Gilman is not entitled to coverage under the West Bend policy, and West Bend does not have a duty to defend or indemnify Gilman in the Underlying Lawsuit.

WHEREFORE, plaintiff, WEST BEND MUTUAL INSURANCE COMPANY, requests that this Court enter a declaratory judgment, finding and declaring as follows:

A.     Plaintiff, WEST BEND MUTUAL INSURANCE COMPANY, does not have a duty to defend or indemnify the CITY OF GILMAN for the lawsuit filed by BRENNAN SAYLER in the Circuit Court of Iroquois County in relation to the sewer project commonly named the 2014 E. Second Street Sanitary Sewer Project, under Policy No. No. CPB0576288 12, because the CITY OF GILMAN was not an Additional Insured under the policy.

B.     Plaintiff, WEST BEND MUTUAL INSURANCE COMPANY, does not have a duty to defend or indemnify the CITY OF GILMAN for the lawsuit filed by BRENNAN SAYLER in the Circuit Court of Iroquois County in relation to the sewer project commonly known as 2014 E. Second Street Sanitary Sewer Project on April 10, 2014, under Policy No. CPB0576288 12, because there was no "completed operations" coverage in favor of GILMAN under the policy.

C.     For further relief as this Court deems just and appropriate.

Respectfully submitted,

By: /s/ Kristin D. Tauras
One of the Attorneys for Plaintiff, WEST
BEND MUTUAL INSURANCE COMPANY

Kristin D. Tauras, Esq.
ARDC #6216004
Kelly Purkey
ARDC #6283785
McKenna Storer
33 North LaSalle Street
Suite 1400
Chicago, Illinois  60602
(312) 558-3900
service@mckenna-law.com
ktauras@mckenna-law.com
kpurkey@mckenna-law.com

# EXHIBIT A

EFILED
7/28/2020 2:32 PM
Lisa K. Hines
Clerk of the Circuit Clerk
21st Judicial Circuit
Iroquois County, IL

**IN THE CIRCUIT COURT
FOR THE TWENTY-FIRST JUDICIAL CIRCUIT
IROQUOIS COUNTY, WATESKA, ILLINOIS**

| | | |
|---|---|---|
| BRENNAN SAYLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.: 19 L 12 |
| | ) | |
| IROQUOIS PAVING CORPORATION, an Illinois | ) | |
| Corporation, PIGGUSH ENGINEERING, INC. an | ) | |
| Illinois Corporation, and VILLAGE OF GILMAN | ) | |
| an Illinois Municipal Corporation. | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES, the Plaintiff, BRENNAN SAYLER, by and through her attorney, MICHAEL

J. BRENNAN, P.C., and complaining of the Defendants IROQUOIS PAVING CORPORATION, and

Illinois Corporation, PIGGUSH ENGINEERING, INC., an Illinois Corporation, and VILLAGE OF

GILMAN an Illinois Municipal Corporation, states as follows:

## OVERVIEW

The Plaintiff is a resident of the Village of Gilman and resides at 511 E. Second Street

and was living there during all relevant times. That the Village of Gilman began a sanitary

sewer project named 2014 E. Second Street Sanitary Sewer Project in April 10, 2014. The

purpose of the sanitary sewer project was the construction of a municipal sewer/water on

Second Street. During the construction of the sewer/water project the existing 511 Sanitary

sewer service was not connected to the New Second Street 8-inch sanitary sewer at 511 E.

Second Street. Regrettably since the repair/construction of the sanitary sewers were

completed in May 21, 2014 there have been sanitary water and/or raw sewage to back up

into Plaintiff's basement causing Plaintiffs to suffer not only significant economic losses, but

# EXHIBIT A

physical and emotional losses as well. Defendants' demonstrate a conscious disregard and utter indifference towards Plaintiff's quiet enjoyment of her home. Defendants have forced Plaintiff to live with raw sewage flowing into the basement of her home, a living condition that is both repugnant and hazardous.

## JURISDICTION AND VENUE

1.  Plaintiff, BRENNAN SAYLER, is a resident of the Village of Gilman, which is located in the County of Iroquois, State of Illinois, and is located at 511 E. Second Street, Gilman, IL 60938 (the "Property").

2.  Defendant, IROQUOIS PAVING CORPORATION, is an Illinois limited liability company, organized and existing under the laws of the State of Illinois.

3.  Defendant, PIGGUSH ENGINEERING, INC., is an Illinois limited liability company, organized and existing under the laws of the State of Illinois.

4.  Defendant the, VILLAGE OF GILMAN, is a municipal corporation, organized and existing under the laws of the State of Illinois, and is covered by public liability insurance.

5.  This Court has jurisdiction over these claims as the Property is located in Iroquois County and a substantial part of the events giving rise to Plaintiff's claims took part in Iroquois County.

## COMMON FACTS

6.  PIGGUSH ENGINEERING, INC., designed the 2014 E. Second Street sanitary sewer project and said design is attached as Exhibit A.

7.  That the Defendant, IROQUOIS PAVING CORPORATION, was the construction company that completed the Sanitary Sewer Project as detailed in Exhibit A.

2

8.     At all relevant times, Defendant, VILLAGE OF GILMAN, provided water and sewer services to the Plaintiff's Property and to all residents of the VILLAGE OF GILMAN, for which Plaintiff and other residents were taxed and assessed fees.

9.     The VILLAGE OF GILMAN'S sanitary sewer systems located in the Subdivision are supposed to be designed to remove wastewater and raw sewage from homes located within the Subdivision, and to transport the wastewater sewage to the VILLAGE OF GILMAN's water treatment plant for clean up before being discharged.

10.     In order to operate at their designed capacity, VILLAGE OF GILMAN'S, sanitary sewer systems located in the Subdivision are required to meet certain design, maintenance and operation standards, such as the ones established by the Illinois Environmental Protection Agency ("IEPA").

11.     Developer's design, maintenance and operation of its sanitary sewer system is governed by Illinois law, including regulations promulgated by the Illinois Pollution Control Board, a division of the IEPA. Among other things, the Pollution Control Board's regulations expressly provide that "overflows from sanitary sewers are expressly prohibited." 35 Ill. Adm. Code §306.304.

12.     The VILLAGE OF GILMAN is also required by law to, inter alia: maintain a current and valid permit for the operation of its sanitary sewer system, submit periodic and annual reports to the IEPA providing detailed information regarding the operation of their sanitary sewer system and report all sanitary sewer overflows to the IEPA within specified timeframes.

3

13.     Illinois Courts have also long imposed a common law duty to refrain from discharging sewage onto private property.

14.     Unbeknownst to Plaintiff, sometime after the completion of the 2014 E. Second Street sanitary sewer project the sewer and/or water lines, including the sewer main serving the Plaintiff's Property and caused water, raw sewage, and other contaminated materials to flow into the basement of the Plaintiff's property.  The water, raw sewage, and other contaminated materials cause extensive damage to both real and personal property, caused a diminution the property value and caused Plaintiff's emotional distress, fear, anxiety, tension, personal injury and emotional fatigue.

15.     That on June 18, 2018 the Plaintiff's family had a company called Roto Rooter come to their home to "unclog" the basement drain since water was not draining properly. It was at this point Roto Rooter informed the Plaintiff that sewage was coming up through the bathroom shower drain because the sanitary sewer from the home was not connected to the main Second Street sanitary sewer and/or was clogged.

16.     That in late June to early July of 2018 the Plaintiff was informed by a Village of Gilman Official that the reason for the backup and problem with drainage in the Plaintiff's home was because the contractor never connected the sewer piping from the Plaintiff's house to the new main second street sanitary sewer system.

17.     That the Plaintiff, BRENNAN SAYLER, became ill after the completion of the completion of the 2014 E. Second Street Sanitary Sewer Project and developed sepsis, kidney failure, a stroke and heart issues.

4

18.     That on or about late July to early August of 2018 the Plaintiff, BRENNAN
SAYLER, had reason to believe that her illness of Leptospirosis was caused by the sewage
from misplaced piping from the 2014 E. Second Street Sanitary Sewer Project that had been
leaking into her basement located at 511 E. Second Street in the Village of Gilman.

19.     As of September 24, 2018, all the Defendants', IROQUOIS PAVING
CORPORATION, PIGGUSH ENGINEERING INC AND THE VILLAGE OF GILMAN had actual
notice of the overflows at the Property.

<u>COUNT I - NEGLIGENCE</u>
<u>(IROQUOIS PAVING CORPORATION)</u>

20.     Plaintiff realleges and incorporate by reference as if fully set forth herein, the
allegations of Paragraphs 1 through 19 above.

21.     The Defendant, IROQUOIS PAVING CORPORATION, without permission,
caused sanitary water and raw sewage to intrude onto the Plaintiff's Property by failing to
design, maintain and/or operate the sewer main and lateral service line.  Such actions
wrongfully interfered with Plaintiffs' actual and exclusive possessory rights in the Property
and caused injury to the Plaintiff.

22.     That the Defendant, IROQUOIS PAVING CORPORATION'S, responsibility was
to reconnect the existing 511 sanitary sewer service to the new Second Street 8 inch sanitary
sewer which they failed to do or if it was completed was completed in such a negligent way
that it ultimately caused raw sanitary water and/or sewage to intrude on to the Plaintiff's
Property, causing personal injury to the Plaintiff, BRENNAN SAYLER.

23.     The sanitary water from on or about April 2014 through late summer of 2018 was caused by the Defendant, IROQUOIS PAVING CORPORATION'S, negligent design, installation, maintenance and operation of the sanitary sewer system in the Subdivision which significantly diminished the capacity of the sewer system servicing the Property, including but not limited to the following negligent acts or omissions:

   a.    Defendant negligently installed the sanitary sewer system by failing to ensure that sanitary sewer water and/or raw sewage would not back-up into the Plaintiff's Property;

   b.    Defendant negligently and carelessly installed its sanitary sewer systems by failing to develop and follow critical and standard operational procedures and guidelines for the efficient and effective maintenance of the storm and sanitary sewer systems;

   c.    Defendant negligently failed to install its sanitary sewer systems by failing to implement and follow standard and routine programs required to allow Village's sanitary sewer systems to function properly and as purportedly designed; and

   d.    Defendant negligently and carelessly failed to connect the sanitary sewer and or piping from the Plaintiff's house to the main Second Street sanitary system thereby creating an unsafe condition on the Plaintiff's property and leading to the injuries to the Plaintiff BRENNAN SAYLER,

   e.    Defendant negligently and carelessly failed to check the work with a camera inside the sewer system to ensure that the sewer pipes from the home were connected to the second street sanitary system.

24.     That as a direct result of the careless and negligent acts of the Defendant, IROQUOIS PAVING CORPORATION, the Plaintiff, BRENNAN SAYLER, has suffered damages as a direct and proximate result of the Defendant, IROQUOIS PAVING CORPORATION'S negligence, including but not limited to:

a.      Discomfort and annoyance; and

b.      Loss or impairment of Plaintiffs' right of quiet enjoyment.

c.      Caused the Property to be filled with noxious odors and smells;

d.      Created an environment that placed Plaintiffs in fear that additional raw sewage would be backing up into their basement;

e.      Caused injury to the Plaintiff specifically illness of Leptospirosis was caused by the sewage.

25.     Plaintiff has suffered damages as a direct and proximate result of Defendant, IROQUOIS PAVING CORPORATION'S, actions, and omissions, which include (but are not limited to): loss due to the significant personal inconvenience to Plaintiffs; annoyance and discomfort experienced by Plaintiff; personal injury to the Plaintiff and loss or impairment of Plaintiff's right of quiet enjoyment.

WHEREFORE, Plaintiff, BRENNAN SAYLER, prays that the Court enter judgment against the Defendant, IROQUOIS PAVING CORPORATION, in an amount in excess of $100,000.00 award Plaintiff her reasonable attorney's fees and costs and that the Court grant such other relief as it deems just and proper.

### COUNT II - NEGLIGENCE
### PIGGUTH ENGINEERING, INC.

26.     Plaintiff realleges and incorporate by reference as if fully set forth herein, the allegations of Paragraphs 1 through 25 above.

7

27.   The Defendant, IROQUOIS PAVING CORPORATION, without permission, caused sanitary water and raw sewage to intrude onto the Plaintiff's Property by failing to design, maintain and/or operate the sewer main and lateral service line.  Such actions wrongfully interfered with Plaintiff's actual and exclusive possessory rights in the Property and caused injury to the Plaintiff.

28.   That the Defendant, IROQUOIS PAVING CORPORATION'S, responsibility was to reconnect the existing 511 sanitary sewer service to the new Second Street 8 inch sanitary sewer which they failed to do or if it was completed was completed in such a negligent way that it ultimately caused raw sanitary water and/or sewage to intrude on to the Plaintiff's Property, causing personal injury to the Plaintiff, BRENNAN SAYLER.

29.   That at all times relevant the Defendant, PIGGUSH ENGINEERING, INC., responsibility was to design the new Second Street sanitary sewer and supervise and assist the Defendant, IROQUOIS PAVING CORPORATION, in its installation of said second street sewer system to ensure that it was completed in a proper manner so that raw sanitary water and/ or sewage would not intrude on the Plaintiff's property.

30.   That the Defendant, PIGGUSH ENGINEERING, INC., designed the plans and drawings and were to obtain all necessary permits including permits from IEPA for the completion of the second street sewer system.

31.   That the Defendant, PIGGUSH ENGINEERING, INC., plans were insufficient in that according to representatives of the Defendant, IROQUOIS PAVING CORPORATION, the plans did not accurately and were vague as to the locations of the service "lateral" lines to each residence.

8

32.     That the Defendant, PIGGUSHI ENGINEERING, INC., in their plans did not specify that the service lateral lines or Pipe laying and backfill shall be performed in accordance with the appropriate specifications of the American Society for Testing and Materials (ASTM) or the Standard Specifications for Water and Sewer Main Construction in Illinois, except that no backfill shall be placed above the top of the building sewer until the work has been inspected. All joints and connections shall be made gastight and watertight which is in violation of the Village of Gilman Municipal Code Chapter 13.08.040 (k)

33.     That the Defendant, PIGGUSH ENGINEERING, INC., without permission, caused sanitary water and raw sewage to intrude onto the Plaintiff's Property by failing to design, maintain, supervise and/or operate the sewer main and lateral service line.  Such actions wrongfully interfered with Plaintiff's actual and exclusive possessory rights in the Property and caused injury to the Plaintiff.

34.     The sanitary water from on or about April 2014 through late summer of 2018 was caused by the Defendant's PIGGUSH ENGINEERING'S, negligent design, maintenance and operation of the sanitary sewer system in the Subdivision which significantly diminished the capacity of the sewer system servicing the Property, including but not limited to the following negligent acts or omissions:

    a.     Defendant negligently designed the sanitary sewer system by failing to ensure that sanitary sewer water and/or raw sewage would not back-up into the Plaintiff's Property;

    b.     Defendant negligently and carelessly designed its sanitary sewer systems by failing to develop and follow critical and standard operational procedures and

9

guidelines for the efficient and effective maintenance of the sanitary sewer systems;

c.      Defendant negligently failed to design its sanitary sewer systems by failing to implement and follow standard and routine programs required to allow Village's sanitary sewer systems to function properly and as purportedly designed; and

d.      Defendant negligently and carelessly failed to connect the sanitary sewer and or piping from the Plaintiff's house to the main Second Street sanitary system thereby creating an unsafe condition on the Plaintiff's property and leading to the injuries to the Plaintiff BRENNAN SAYLER,

e.      Defendant negligently and carelessly failed to check the work with a camera inside the sewer system to ensure that the sewer pipes from the home were connected to the second street sanitary system,

f.      Defendant negligently and carelessly failed to accurately identify in the plans the location of the service laterals to each residence,

g.      Defendant negligently and carelessly did not include in the plans that the lateral service lines had to be inspected before there could be any backfill done by the contractors in violation of the Village of Gilman Municipal Code Chap 13.08.040 (k)

35.     That as a direct result of the careless and negligent acts of the Defendant, IROQUOIS PAVING CORPORATION, the Plaintiff, BRENNAN SAYLER, has suffered damages as a direct and proximate result of the Defendant, PIGGUSH ENGINEERING, INC., negligence, including but not limited to:

10

a.      Discomfort and annoyance; and

b.      Loss or impairment of Plaintiffs' right of quiet enjoyment.

c.      Caused the Property to be filled with noxious odors and smells;

d.      Created an environment that placed Plaintiffs in fear that additional raw sewage would be backing up into their basement;

e.      Caused injury to the Plaintiff specifically illness of Leptospirosis was caused by the sewage.

36.     Plaintiff has suffered damages as a direct and proximate result of Defendant PIGGUSH ENGINEERING, INC., actions, and omissions, which include (but are not limited to): loss due to the significant personal inconvenience to Plaintiff; annoyance and discomfort experienced by Plaintiff; personal injury to the Plaintiff and loss or impairment of Plaintiff's right of quiet enjoyment.

WHEREFORE, Plaintiff, BRENNAN SAYLER prays that the Court enter judgment against the Defendant, PIGGUSH ENGINEERING, INC, in an amount in excess of $100,000.00 award Plaintiff her reasonable attorney's fees and costs and that the Court grant such other relief as it deems just and proper.

## COUNT III - NEGLIGENCE
## VILLAGE OF GILMAN

37.     Plaintiff realleges and incorporate by reference as if fully set forth herein, the allegations of Paragraphs 1 through 36 above.

38.     That the Defendant VILLAGE OF GILMAN, began a sanitary sewer project named 2014 E. Second Street Sanitary Sewer Project in April 10, 2014. The purpose of the sanitary sewer project was the construction of a municipal sewer/water on Second Street.

11

During the construction of the sewer/water project the existing 511 Sanitary sewer service was not connected to the New Second Street 8-inch sanitary sewer at 511 E. Second Street.

39.     That at all times relevant the Defendant, VILLAGE OF GILMAN, owned, maintained and repaired all the sewer and sanitary sewer systems in the Village of Gilman.

40.     That the Defendant VILLAGE OF GILMAN hired the Defendant, IROQUOIS PAVING CORPORATION to design and install the new Second Street Sewer System and to connect the new sewer systems to the sewer system of each homeowner on Second Street in the Village of Gilman.

41.     That the Defendant VILLAGE OF GILMAN hired the Defendant, PIGGUSH ENGINEERING, INC., to design and install the new Second Street Sewer System and to connect the new sewer systems to the sewer system of each homeowner on Second Street in the Village of Gilman and hired the Defendant, PIGGUSH ENGINEERING, INC., to supervise the work and performance of the Defendant, IROQUOIS PAVING CORPORATION, for the Second Street Sanitary system project.

42.     The Defendant, VILLAGE OF GILLMAN, without permission, caused sanitary water and raw sewage to intrude onto the Plaintiff's Property by failing to design, maintain and/or operate the sewer main and lateral service line. Such actions wrongfully interfered with Plaintiff's actual and exclusive possessory rights in the Property and caused injury to the Plaintiff.

43.     That the Defendant, VILLAGE OF GILLMAN, was responsible to ensure that the existing 511 sanitary sewer service to the new Second Street 8 inch sanitary sewer was properly reconnected which they failed to do or if it was completed was completed in such a

negligent way that it ultimately caused raw sanitary water and/or sewage to intrude on to the Plaintiff's Property, causing personal injury to the Plaintiff, BRENNAN SAYLER.

44.　　That the defendant, VILLAGE OF GILMAN, was also to supervise the work of both the Defendants', IROQUOIS PAVING CORPORATION AND PIGGUSH ENGINEERING, INC., for the Second Street Sewer System Project.

45.　　The sanitary water from on or about April 2014 through late summer of 2018 was caused by the Defendant's, VILLAGE OF GILMAN'S, negligent maintenance and supervision of the Second Street Sanitary Project which significantly diminished the capacity of the sewer system servicing the Property, including but not limited to the following negligent acts or omissions:

　　　a.　　Defendant negligently designed the sanitary sewer system by failing to ensure that sanitary sewer water and/or raw sewage would not back-up into the Plaintiff's Property;

　　　b.　　Defendant negligently and carelessly designed its sanitary sewer systems by failing to develop and follow critical and standard operational procedures and guidelines for the efficient and effective maintenance of the sanitary sewer systems;

　　　c.　　Defendant negligently failed to design its sanitary sewer systems by failing to implement and follow standard and routine programs required to allow Village's sanitary sewer systems to function properly and as purportedly designed; and

　　　d.　　Defendant negligently and carelessly failed to connect the sanitary sewer and or piping from the Plaintiff's house to the main Second Street sanitary system

thereby creating an unsafe condition on the Plaintiff's property and leading to the injuries to the Plaintiff BRENNAN SAYLER,

e.   Defendant negligently and carelessly failed to check the work with a camera inside the sewer system to ensure that the sewer pipes from the home were connected to the second street sanitary system.

f.   Failed to properly maintain the system once the system was completed so that if they had properly maintained or examined the system the Defendant, Village of Gilman would have discovered that the sewer pipes from the Plaintiff's house were not connected to the Second Street main sewer system.

46.   That as a direct result of the careless and negligent acts of the Defendant, IROQUOIS PAVING CORPORATION, the Plaintiff, BRENNAN SAYLER, has suffered damages as a direct and proximate result of the Defendant, VILLAGE OF GILMAN, negligence, including but not limited to:

a.   Discomfort and annoyance; and

b.   Loss or impairment of Plaintiffs' right of quiet enjoyment.

c.   Caused the Property to be filled with noxious odors and smells;

d.   Created an environment that placed Plaintiffs in fear that additional raw sewage would be backing up into their basement;

e.   Caused injury to the Plaintiff specifically illness of Leptospirosis was caused by the sewage.

47.   Plaintiff has suffered damages as a direct and proximate result of Defendant, VILLAGE OF GILMAN, actions, and omissions, which include (but are not limited to): loss due to the significant personal inconvenience to Plaintiffs; annoyance and discomfort

14

experienced by Plaintiff; personal injury to the Plaintiff and loss or impairment of Plaintiff's right of quiet enjoyment.

WHEREFORE, Plaintiff, BRENNAN SAYLER, prays that the Court enter judgment against the Defendant, VILLAGE OF GILMAN in an amount in excess of $100,000.00 award Plaintiff her reasonable attorney's fees and costs and that the Court grant such other relief as it deems just and proper.

MICHAEL J. BRENNAN,
Attorney for Plaintiff

MICHAEL J. BRENNAN, P.C. #6190125
Attorney for Plaintiffs
16521 S. 106th Court
Orland Park, Illinois 60467
(708) 460-9300
mikebrennanlaw@gmail.com

15

# EXHIBIT B

# AFFIDAVIT

Linda D. Hautala, being first duly sworn on oath, deposes and says:  That she is a duly

authorized custodian of the records of West Bend Mutual Insurance Company and she has the

authority to certify those records.

Based upon my review of policy records, the policy attached to this affidavit is a true copy of the

General Liability coverage of the Commercial Lines Package policy, bearing policy

#CPB0576288 12 as that policy was in effect on December 31, 2013 to December 31, 2014.

*Linda Hautala*
_____
Electronically signed by Linda Hautala
Dated:  December 23, 2020



West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.   0110053479

R     118

```
                    COMMERCIAL LINES POLICY ENDORSEMENT
POLICY NUMBER CPB 0576288 12
                    ENDORSEMENT EFFECTIVE AUG. 22, 2014
                    ADDING ADDITIONAL INSURED, WAIVER OF SUBROGATION AND CG2427
                    TO GL, ADDITIONAL INSURED & WAIVER OF SUBROGATION TO AUTO


INSURED NAME AND ADDRESS            AGENCY NAME AND ADDRESS

IROQUOIS PAVING CORP                J L HUBBARD INSURANCE & BONDS
J&D COMPANY                         1090 S ROUTE 51
PO BOX 466                          PO BOX 14
WATSEKA, IL 60970                   FORSYTH, IL 62535
                                    (217) 877-3344
                                    AGENCY NUMBER: 1266457 01


POLICY PERIOD:        FROM: DEC. 31, 2013  TO: DEC. 31, 2014  AT
     12:01 A.M.  STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.


IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
_____
     THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
     FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
     BE SUBJECT TO ADJUSTMENT.                              PREMIUM

BUSINESS AUTO COVERAGE                                      $75,373.00
COMMERCIAL PROPERTY COVERAGE                               $10,050.00
COMMERCIAL GENERAL LIABILITY COVERAGE                     $146,717.00
COMMERCIAL INLAND MARINE COVERAGE                         $102,616.00


                              TOTAL PREMIUM:              $334,756.00
                         ADDITIONAL AMOUNT:                 $1,585.00
```

```
COUNTERSIGNED THIS ____ DAY OF _____,20___ BY _____
                                                (AUTHORIZED REPRESENTATIVE)
FORM NO. COMMONDEC 02/09              ISSUED 09/03/2014
```

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

CUSTOMER NO.   0110053479

R    118

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATION AMENDMENT

POLICY NUMBER CPB 0576288 12
            ENDORSEMENT EFFECTIVE AUG.  22, 2014
            ADDING ADDITIONAL INSURED, WAIVER OF SUBROGATION AND CG2427
            TO GL, ADDITIONAL INSURED & WAIVER OF SUBROGATION TO AUTO

INSURED NAME: IROQUOIS PAVING CORP

LIMITS OF INSURANCE:
GENERAL AGGREGATE LIMIT
   (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)       $2,000,000
PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT       $2,000,000
EACH OCCURRENCE LIMIT                                 $1,000,000
MEDICAL EXPENSE LIMIT, ANY ONE PERSON                    $10,000
DAMAGE TO PREMISES RENTED TO YOU LIMIT                  $200,000
PERSONAL AND ADVERTISING INJURY LIABILITY LIMIT       $1,000,000

DEDUCTIBLE  $   1000  (FORM CG 03 00) APPLICABLE TO PROPERTY DAMAGE CLAIMS.
                      ADDITIONAL PREMIUM IS:        $1,560.00

FORM NO. CGL COV  02/09                    ISSUED 09/03/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE AMENDMENT

POLICY NUMBER CPB 0576288 12
              ENDORSEMENT EFFECTIVE AUG. 22, 2014
              ADDING ADDITIONAL INSURED, WAIVER OF SUBROGATION AND CG2427
              TO GL, ADDITIONAL INSURED & WAIVER OF SUBROGATION TO AUTO

INSURED NAME: IROQUOIS PAVING CORP

                                    TOTAL PREMIUM:      $146,717.00

              COMMERCIAL GENERAL LIABILITY CLASSIFICATIONS


  LOC  ST TER CODE        PREMIUM BASIS        PER      RATE      PREMIUM COV
  ------------------------------------------------------------------------------

  THE FOLLOWING COVERAGE HAS BEEN CHANGED:
     1 IL 514 11111        IF ANY            FLAT     CHARGE       $960 O
  WB2030-ADDITIONAL INSURED


  THE FOLLOWING COVERAGE HAS BEEN CHANGED:
     1 IL 514 11111        IF ANY            FLAT     CHARGE       $4,000 O
  CG2427-LIMITED CONTRACTUAL LIABILITY-RAILROADS

                       TERRORISM RISK INSURANCE ACT OF 2002         $0



                    THE PRO-RATED ADDITIONAL PREMIUM IS:      $1,560



FORM NO. GL SCHED 02/09                    ISSUED 09/03/2014

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

```
NAME OF PERSON OR ORGANIZATION:
 TOLEDO, PEORIA & WESTERN RAILWAY CORP
 JOB: IDOT CONTRACT NO 66D69-MILLING & RESURFACING-IROQUOIS COUNTY-
 $500,000 CONTRACT/$10,000 W/IN 50' OF THE RR
```

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

```
SCHEDULED RAILROAD:
TOLEDO, PEORIA & WESTERN RAILWAY CORP
13901 SUTTON PARK DR S STE 160
JACKSONVILLE, FL 32224

DESIGNATED JOB SITE:
IDOT CONTRACT NO 66D69-MILLING & RESURFACING-IROQUOIS COUNTY-
$500,000 CONTRACT/$10,000 W/IN 50' OF THE RR
```

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the **Definitions** Section is replaced by the following:

**9.** "Insured Contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

    **(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

```
NAME OF ADDITIONAL INSURED PERSON(S) OR ORGANIZATION(S):

TOLEDO, PEORIA & WESTERN RAILWAY CORP
13901 SUTTON PARK DR S STE 160
JACKSONVILLE, FL 32224




LOCATION(S) OF COVERED OPERATIONS:

IDOT CONTRACT NO 66D69-MILLING & RESURFACING-IROQUOIS COUNTY-
$500,000 CONTRACT/$10,000 W/IN 50' OF THE RR
```

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured.

If the name of the person or organization stated above includes any architect, engineer or surveyor, the following applies:

The insurance with respect to such architects, engineers, or surveyors does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

   **a.** The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

   **b.** Supervisory, inspection, or engineering services.

If a written contract between you and the additional insured specifically requires that this insurance be primary, then the insurance afforded by this endorsement is primary insurance and we will not seek contribution from any other insurance available to the additional insured named in this schedule unless the other insurance is provided by a contractor other than the named insured.  Then we will share with that other insurance by the method described below.

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

If no contract between you and the additional insured requires that this insurance be primary, then the coverage granted to the additional insured under this endorsement shall be excess over any other valid and collectible insurance.

**WB 2030 01 06**

Contains material copyrighted by ISO, with its permission.
West Bend Mutual Insurance Company
West Bend, Wisconsin 53095

**Page 1 of 1**



CUSTOMER NO.  0110053479

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

R    227

COMMERCIAL LINES POLICY ENDORSEMENT
POLICY NUMBER CPB 0576288 12
            ENDORSEMENT EFFECTIVE JULY 15, 2014
            ADDING WAIVER OF SUBROGATION TO AUTO AND GENERAL LIABILITY


INSURED NAME AND ADDRESS          AGENCY NAME AND ADDRESS

IROQUOIS PAVING CORP              J L HUBBARD INSURANCE & BONDS
J&D COMPANY                       1090 S ROUTE 51
PO BOX 466                        PO BOX 14
WATSEKA, IL 60970                 FORSYTH, IL 62535
                                  (217) 877-3344
                                  AGENCY NUMBER: 1266457 01


POLICY PERIOD:        FROM: DEC. 31, 2013  TO: DEC. 31, 2014  AT
     12:01 A.M.  STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.


IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
_____
   THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
   FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
   BE SUBJECT TO ADJUSTMENT.                          PREMIUM

BUSINESS AUTO COVERAGE                                $75,348.00
COMMERCIAL PROPERTY COVERAGE                          $10,050.00
COMMERCIAL GENERAL LIABILITY COVERAGE                $145,157.00
COMMERCIAL INLAND MARINE COVERAGE                    $102,616.00

                              TOTAL PREMIUM:         $333,171.00




COUNTERSIGNED THIS ____ DAY OF _____,20___ BY _____
                                               (AUTHORIZED REPRESENTATIVE)
FORM NO. COMMONDEC 02/09             ISSUED 08/26/2014

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

NAME OF PERSON OR ORGANIZATION:
 TOLEDO, PEORIA AND WESTERN RAILWAY CORP

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.



West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

COMMERCIAL LINES POLICY ENDORSEMENT
POLICY NUMBER CPB 0576288 12
            ENDORSEMENT EFFECTIVE MAY  20, 2014
            ADDING CG2427 & ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME AND ADDRESS          AGENCY NAME AND ADDRESS

IROQUOIS PAVING CORP              J L HUBBARD INSURANCE & BONDS
J&D COMPANY                       1090 S ROUTE 51
PO BOX 466                        PO BOX 14
WATSEKA, IL 60970                 FORSYTH, IL 62535
                                  (217) 877-3344
                                  AGENCY NUMBER: 1266457 01


POLICY PERIOD:       FROM: DEC. 31, 2013  TO: DEC. 31, 2014  AT
     12:01 A.M.  STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.


IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
_____
      THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
      FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
      BE SUBJECT TO ADJUSTMENT.                          PREMIUM

BUSINESS AUTO COVERAGE                                 $73,961.00
COMMERCIAL PROPERTY COVERAGE                           $10,050.00
COMMERCIAL GENERAL LIABILITY COVERAGE                 $145,157.00
COMMERCIAL INLAND MARINE COVERAGE                     $102,616.00

                         TOTAL PREMIUM:               $331,784.00
                         ADDITIONAL AMOUNT:            $1,150.00


COUNTERSIGNED THIS ____ DAY OF _____,20___ BY _____
                                                (AUTHORIZED REPRESENTATIVE)
FORM NO. COMMONDEC 02/09                  ISSUED 06/05/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.  0110053479

R    118

COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATION AMENDMENT

POLICY NUMBER CPB 0576288 12
                ENDORSEMENT EFFECTIVE MAY   20, 2014
                ADDING CG2427 & ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME: IROQUOIS PAVING CORP


LIMITS OF INSURANCE:
GENERAL AGGREGATE LIMIT
    (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)      $2,000,000
PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT       $2,000,000
EACH OCCURRENCE LIMIT                                 $1,000,000
MEDICAL EXPENSE LIMIT, ANY ONE PERSON                    $10,000
DAMAGE TO PREMISES RENTED TO YOU LIMIT                  $200,000
PERSONAL AND ADVERTISING INJURY LIABILITY LIMIT       $1,000,000



DEDUCTIBLE  $   1000  (FORM CG 03 00) APPLICABLE TO PROPERTY DAMAGE CLAIMS.
                            ADDITIONAL PREMIUM IS:        $1,150.00


FORM NO. CGL COV  02/09                    ISSUED 06/05/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend. WI 53095

COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE AMENDMENT

POLICY NUMBER CPB 0576288 12
              ENDORSEMENT EFFECTIVE MAY  20, 2014
              ADDING CG2427 & ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME: IROQUOIS PAVING CORP

                              TOTAL PREMIUM:     $145,157.00

             COMMERCIAL GENERAL LIABILITY CLASSIFICATIONS


| LOC  ST TER CODE | PREMIUM BASIS | PER | RATE | PREMIUM COV |
|---|---|---|---|---|
| THE FOLLOWING COVERAGE HAS BEEN CHANGED: | | | | |
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $400 O |
| WB2030-ADDITIONAL INSURED | | | | |
| | | | | |
| THE FOLLOWING COVERAGE HAS BEEN CHANGED: | | | | |
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $3,000 O |
| CG2427-LIMITED CONTRACTUAL LIABILITY-RAILROADS | | | | |
| | TERRORISM RISK INSURANCE ACT OF 2002 | | | $0 |


              THE PRO-RATED ADDITIONAL PREMIUM IS:     $1,150

FORM NO. GL SCHED 02/09                    ISSUED 06/05/2014

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

```
SCHEDULED RAILROAD:
TOLEDO, PEORIA & WESTERN RAILWAY CORP



DESIGNATED JOB SITE:
PAVING WORK ADJACENT TO THE TRACKS - NOT ON OR GOING UNDERNEATH TRACKS
APPLIES SOLELY TO PROJECT NO 1400502 AND 1400602 FOR CITY OF WATESKA
```

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the **Definitions** Section is replaced by the following:

**9.** "Insured Contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

**CG 24 27 03 05**        © ISO Properties, Inc., 2004        **Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

NAME OF ADDITIONAL INSURED PERSON(S) OR ORGANIZATION(S):

TOLEDO, PEORIA & WESTERN RAILWAY CORP
1990 E WASHINGTON ST
EAST PEORIA, IL 61611

LOCATION(S) OF COVERED OPERATIONS:

CITY OF WATESKA
PROJECT NO 1400502 & 1400602

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured.

If the name of the person or organization stated above includes any architect, engineer or surveyor, the following applies:

The insurance with respect to such architects, engineers, or surveyors does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**a.** The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

**b.** Supervisory, inspection, or engineering services.

If a written contract between you and the additional insured specifically requires that this insurance be primary, then the insurance afforded by this endorsement is primary insurance and we will not seek contribution from any other insurance available to the additional insured named in this schedule unless the other insurance is provided by a contractor other than the named insured.  Then we will share with that other insurance by the method described below.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

If no contract between you and the additional insured requires that this insurance be primary, then the coverage granted to the additional insured under this endorsement shall be excess over any other valid and collectible insurance.



West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

```
                    COMMERCIAL LINES POLICY ENDORSEMENT
POLICY NUMBER CPB 0576288 12
                    ENDORSEMENT EFFECTIVE APR. 15, 2014
                    ADDING ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME AND ADDRESS            AGENCY NAME AND ADDRESS

IROQUOIS PAVING CORP                J L HUBBARD INSURANCE & BONDS
J&D COMPANY                         1090 S ROUTE 51
PO BOX 466                          PO BOX 14
WATSEKA, IL 60970                   FORSYTH, IL 62535
                                    (217) 877-3344
                                    AGENCY NUMBER: 1266457 01


POLICY PERIOD:        FROM: DEC. 31, 2013  TO: DEC. 31, 2014  AT
     12:01 A.M.  STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.


IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
_____
     THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
     FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
     BE SUBJECT TO ADJUSTMENT.                            PREMIUM

BUSINESS AUTO COVERAGE                                   $73,961.00
COMMERCIAL PROPERTY COVERAGE                             $10,050.00
COMMERCIAL GENERAL LIABILITY COVERAGE                   $144,007.00
COMMERCIAL INLAND MARINE COVERAGE                       $102,616.00

                         TOTAL PREMIUM:     $330,634.00
                         ADDITIONAL AMOUNT:     $150.00




COUNTERSIGNED THIS ____ DAY OF _____,20___ BY _____
                                              (AUTHORIZED REPRESENTATIVE)
FORM NO. COMMONDEC 02/09              ISSUED 04/25/2014
```

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.   0110053479

R    123

COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATION AMENDMENT

POLICY NUMBER CPB 0576288 12
                ENDORSEMENT EFFECTIVE APR.  15, 2014
                ADDING ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME: IROQUOIS PAVING CORP


LIMITS OF INSURANCE:
GENERAL AGGREGATE LIMIT
    (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)      $2,000,000
PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT       $2,000,000
EACH OCCURRENCE LIMIT                                 $1,000,000
MEDICAL EXPENSE LIMIT, ANY ONE PERSON                    $10,000
DAMAGE TO PREMISES RENTED TO YOU LIMIT                  $200,000
PERSONAL AND ADVERTISING INJURY LIABILITY LIMIT       $1,000,000



DEDUCTIBLE  $   1000  (FORM CG 03 00) APPLICABLE TO PROPERTY DAMAGE CLAIMS.
                      ADDITIONAL PREMIUM IS:              $150.00












FORM NO. CGL COV  02/09                ISSUED 04/25/2014

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE AMENDMENT

POLICY NUMBER CPB 0576288 12
            ENDORSEMENT EFFECTIVE APR. 15, 2014
            ADDING ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME: IROQUOIS PAVING CORP

                                    TOTAL PREMIUM:     $144,007.00

               COMMERCIAL GENERAL LIABILITY CLASSIFICATIONS


   LOC  ST TER CODE        PREMIUM BASIS        PER      RATE     PREMIUM COV
   ----------------------------------------------------------------------------

THE FOLLOWING COVERAGE HAS BEEN CHANGED:
     1 IL 514 11111          IF ANY          FLAT     CHARGE       $300 O
   CG2010X-ADDITIONAL INSURED

                        TERRORISM RISK INSURANCE ACT OF 2002         $0



                   THE PRO-RATED ADDITIONAL PREMIUM IS:        $150

FORM NO. GL SCHED 02/09              ISSUED 04/25/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.   0110053479

R    123

POLICY NUMBER CPB 0576288 12
        ENDORSEMENT EFFECTIVE APR. 15, 2014
        ADDING ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME: IROQUOIS PAVING CORP

                ADDITIONAL INTEREST

    VARIOUS LOCATIONS
    ILLINOIS CENTRAL RAILROAD CO &
    IT'S PARENTS
    17641 S ASHLAND AVE
    HOMEWOOD, IL
    60430
    FORM CG2010X APPLIES
    OWNERS, LESSEES OR CONTRACTORS
  *ADDITIONAL INSURED
    HAS BEEN ADDED


FORM NO. ADDINT 02/09   PAGE   1 LAST      ISSUED 04/25/2014



CUSTOMER NO.  0110053479

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

R      118

```
              COMMERCIAL LINES POLICY ENDORSEMENT
POLICY NUMBER CPB 0576288 12
              ENDORSEMENT EFFECTIVE DEC. 31, 2013
              ADDING ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME AND ADDRESS          AGENCY NAME AND ADDRESS

IROQUOIS PAVING CORP              J L HUBBARD INSURANCE & BONDS
J&D COMPANY                       1090 S ROUTE 51
PO BOX 466                        PO BOX 14
WATSEKA, IL 60970                 FORSYTH, IL 62535
                                  (217) 877-3344
                                  AGENCY NUMBER: 1266457 01


POLICY PERIOD:       FROM: DEC. 31, 2013  TO: DEC. 31, 2014  AT
     12:01 A.M.  STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.


IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
```

```
     THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
     FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
     BE SUBJECT TO ADJUSTMENT.                         PREMIUM

BUSINESS AUTO COVERAGE                                $73,674.00
COMMERCIAL PROPERTY COVERAGE                          $10,050.00
COMMERCIAL GENERAL LIABILITY COVERAGE               $143,857.00
COMMERCIAL INLAND MARINE COVERAGE                   $102,100.00

                        TOTAL PREMIUM:     $329,681.00
```

```
COUNTERSIGNED THIS ____ DAY OF _____,20___ BY _____
                                             (AUTHORIZED REPRESENTATIVE)
FORM NO. COMMONDEC 02/09              ISSUED 03/11/2014
```

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.  0110053479

R    118

```
POLICY NUMBER CPB 0576288 12
            ENDORSEMENT EFFECTIVE DEC. 31, 2013
            ADDING ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME: IROQUOIS PAVING CORP

                        ADDITIONAL INTEREST

      LOCATION 0005
      6605 STEGER ROAD BLDG CORP
      COMMERCIAL CONSTRUCTION, INC
      7048 W STEGER RD
      FRANKFORT, IL
      60423
      FORM CG2011 APPLIES
      MANAGERS OR LESSORS OF PREMISE
     *ADDITIONAL INSURED
      HAS BEEN ADDED
```

```
FORM NO. ADDINT 02/09    PAGE   1 LAST       ISSUED 03/11/2014
```

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend. WI 53095

CUSTOMER NO.  0110053479

R    118

GENERAL LIABILITY DECLARATION

POLICY NUMBER CPB 0576288 12
                ENDORSEMENT EFFECTIVE DEC. 31, 2013
                ADDING ADDITIONAL INSURED TO GENERAL LIABILITY


INSURED NAME: IROQUOIS PAVING CORP

            THE FOLLOWING FORMS HAVE BEEN ADDED TO THE POLICY.

                        FORMS SCHEDULE

    NUMBER              DESCRIPTION

CG2011    01/96 A    ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES


A - INDICATES FORM HAS BEEN ADDED
FORM NO. GLFORMSINV 02/09              ISSUED 03/11/2014



West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.  0110053479

R     118

```
                    COMMERCIAL LINES POLICY ENDORSEMENT
POLICY NUMBER CPB 0576288 12
                    ENDORSEMENT EFFECTIVE DEC. 31, 2013
                    DELETING LOC 6, CLASS CODE 51241 AND ADDING LOC 5, CLASS
                    CODE 51241 & DELETING ADDITIONAL INSURED FOR GEN LIABILITY


INSURED NAME AND ADDRESS              AGENCY NAME AND ADDRESS

IROQUOIS PAVING CORP                  J L HUBBARD INSURANCE & BONDS
J&D COMPANY                           1090 S ROUTE 51
PO BOX 466                            PO BOX 14
WATSEKA, IL 60970                     FORSYTH, IL 62535
                                      (217) 877-3344
                                      AGENCY NUMBER: 1266457 01


POLICY PERIOD:        FROM: DEC. 31, 2013  TO: DEC. 31, 2014  AT
     12:01 A.M.  STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.


IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
```

```
     THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
     FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
     BE SUBJECT TO ADJUSTMENT.                           PREMIUM

BUSINESS AUTO COVERAGE                                 $75,250.00
COMMERCIAL PROPERTY COVERAGE                           $10,050.00
COMMERCIAL GENERAL LIABILITY COVERAGE                 $143,857.00
COMMERCIAL INLAND MARINE COVERAGE                     $102,100.00

                          TOTAL PREMIUM:    $331,257.00
```

```
COUNTERSIGNED THIS ____ DAY OF _____,20___ BY _____
                                               (AUTHORIZED REPRESENTATIVE)
FORM NO. COMMONDEC 02/09              ISSUED 02/14/2014
```

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.   0110053479

R    118

COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATION AMENDMENT

POLICY NUMBER CPB 0576288 12
                    ENDORSEMENT EFFECTIVE DEC.  31, 2013
                    DELETING LOC 6, CLASS CODE 51241 AND ADDING LOC 5, CLASS
                    CODE 51241 & DELETING ADDITIONAL INSURED FOR GEN LIABILITY


INSURED NAME: IROQUOIS PAVING CORP


LIMITS OF INSURANCE:
GENERAL AGGREGATE LIMIT
   (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)        $2,000,000
PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT        $2,000,000
EACH OCCURRENCE LIMIT                                  $1,000,000
MEDICAL EXPENSE LIMIT, ANY ONE PERSON                     $10,000
DAMAGE TO PREMISES RENTED TO YOU LIMIT                   $200,000
PERSONAL AND ADVERTISING INJURY LIABILITY LIMIT        $1,000,000




DEDUCTIBLE  $   1000  (FORM CG 03 00) APPLICABLE TO PROPERTY DAMAGE CLAIMS.

SEE ATTACHED SCHEDULE FOR FORMS AND ENDORSEMENTS APPLICABLE
TO THIS COVERAGE PART








FORM NO. CGL COV  02/09                    ISSUED 02/14/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.  0110053479

R    118

COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE AMENDMENT

POLICY NUMBER CPB 0576288 12
           ENDORSEMENT EFFECTIVE DEC. 31, 2013
           DELETING LOC 6, CLASS CODE 51241 AND ADDING LOC 5, CLASS
           CODE 51241 & DELETING ADDITIONAL INSURED FOR GEN LIABILITY

INSURED NAME: IROQUOIS PAVING CORP

                                    TOTAL PREMIUM:      $143,857.00

          COMMERCIAL GENERAL LIABILITY CLASSIFICATIONS


| LOC | ST | TER | CODE | PREMIUM BASIS | PER | RATE | PREMIUM | COV |
|-----|----|----|------|---------------|-----|------|---------|-----|
| THE FOLLOWING COVERAGE HAS BEEN ADDED: | | | | | | | | |
| 5 | IL | 509 | 51241 | 666,644 GROSS SALES | 1000 | $2.672 | $1,781 | O* |
| ASPHALT WORKS | | | | | | $1.146 | $764 | P* |
| | | | | | | | | |
| THE FOLLOWING COVERAGE HAS BEEN DELETED: | | | | | | | | |
| 6 | IL | 509 | 51241 | 666,644 GROSS SALES | 1000 | $2.672 | $0 | O* |
| ASPHALT WORKS | | | | | | $1.146 | $0 | P* |
| | | | TERRORISM RISK INSURANCE ACT OF 2002 | | | | $0 | |


(*) DEDUCTIBLE APPLIES - PER CLAIM


FORM NO. GL SCHED 02/09                    ISSUED 02/14/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

```
POLICY NUMBER CPB 0576288 12
                ENDORSEMENT EFFECTIVE DEC. 31, 2013
                DELETING LOC 6, CLASS CODE 51241 AND ADDING LOC 5, CLASS
                CODE 51241 & DELETING ADDITIONAL INSURED FOR GEN LIABILITY

INSURED NAME: IROQUOIS PAVING CORP

                            ADDITIONAL INTEREST

        LOCATION 0006
        6605 STEGER ROAD BLDG CORP
        COMMERCIAL CONSTRUCTION, INC
        7048 W STEGER RD
        FRANKFORT, IL
        60423
        FORM CG2011 APPLIES
        MANAGERS OR LESSORS OF PREMISE
       *ADDITIONAL INSURED
        HAS BEEN DELETED
```

```
FORM NO. ADDINT 02/09    PAGE    1 LAST        ISSUED 02/14/2014
```

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.   0110053479

R    118

GENERAL LIABILITY DECLARATION

POLICY NUMBER CPB 0576288 12
             ENDORSEMENT EFFECTIVE DEC. 31, 2013
             DELETING LOC 6, CLASS CODE 51241 AND ADDING LOC 5, CLASS
             CODE 51241 & DELETING ADDITIONAL INSURED FOR GEN LIABILITY

INSURED NAME: IROQUOIS PAVING CORP

        THE FOLLOWING FORMS HAVE BEEN DELETED FROM THE POLICY.

                          FORMS SCHEDULE

     NUMBER              DESCRIPTION

  CG2011    01/96 D   ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

  D - INDICATES FORM HAS BEEN DELETED
  FORM NO. GLFORMSINV 02/09              ISSUED 02/14/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

COMMERCIAL LINES POLICY DECLARATION

POLICY NUMBER CPB 0576288 12

RENEWAL

| INSURED NAME AND ADDRESS | AGENCY NAME AND ADDRESS |
|---|---|
| IROQUOIS PAVING CORP | J L HUBBARD INSURANCE & BONDS |
| J&D COMPANY | 1090 S ROUTE 51 |
| PO BOX 466 | PO BOX 14 |
| WATSEKA, IL 60970 | FORSYTH, IL 62535 |
| | (217) 877-3344 |
| | AGENCY NUMBER: 1266457 01 |

POLICY PERIOD:      FROM: DEC. 31, 2013  TO: DEC. 31, 2014  AT
     12:01 A.M.  STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS
FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY
BE SUBJECT TO ADJUSTMENT.                               PREMIUM

BUSINESS AUTO COVERAGE                                  $78,832.00
COMMERCIAL PROPERTY COVERAGE                            $10,050.00
COMMERCIAL GENERAL LIABILITY COVERAGE                   $143,857.00
COMMERCIAL INLAND MARINE COVERAGE                       $98,675.00

                          TOTAL PREMIUM:                $331,414.00
                          PAYABLE AT INCEPTION:         $331,414.00

SEE ATTACHED SCHEDULE FOR FORMS APPLICABLE TO ALL COVERAGE PARTS

COUNTERSIGNED THIS ____ DAY OF _____,20___ BY _____
                                                  (AUTHORIZED REPRESENTATIVE)
FORM NO. COMMONDEC 02/09                  ISSUED 01/06/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend. WI 53095

POLICY SCHEDULE OF NAMES AND ADDRESSES

POLICY NUMBER CPB 0576288 12

RENEWAL

INSURED NAME: IROQUOIS PAVING CORP

THE FOLLOWING ARE INSUREDS ON THIS POLICY

IROQUOIS PAVING CORP, J&D COMPANY, JOE COWAN AND JOHN
LYNCH II DBA C&L PARTNERS, INTERSTATE ASPHALT, LLC AND
INTERSTATE TRUCKING, LLC

LOCATIONS OR PREMISES YOU OWN, RENT OR OCCUPY

LOC/PREM 0001
1889 E US 24
WATSEKA, IROQUOIS, IL
60970

LOC/PREM 0002
557 E US HWY 24
GILMAN, IROQUOIS, IL
60938

LOC/PREM 0003
370 800 NORTH RD
BUCKLEY, IROQUOIS, IL
60918

LOC/PREM 0004
SOUTH SIDE RTE 24
WATSEKA, IROQUOIS, IL
60970

LOC/PREM 0005
5701 INDUSTRIAL DR UNIT 1/2
MONEE, WILL, IL
60449

LOC/PREM 0006
1395 C MAIN ST
CRETE, WILL, IL
60417

LOC/PREM 0007
PARCEL 19-31-376-005
IROQUOIS, IROQUOIS, IL
60970

LOC/PREM 0008
PARCEL 25-01-227-020
CRESCENT CITY, IROQUOIS, IL
60953

FORM NO. COMMONNA 02/09 PAGE   1 CONTINUED  ISSUED 01/06/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

POLICY SCHEDULE OF NAMES AND ADDRESSES

POLICY NUMBER CPB 0576288 12

RENEWAL

INSURED NAME: IROQUOIS PAVING CORP

LOC/PREM 0009                    LOC/PREM 0010
PARCEL 26-08-100-015             19900 WESTERN AVE
BELLMONT, WABASH, IL             OLYMPIA FIELDS, COOK, IL
60974                            60461

VEHICLE   113 GARAGING LOCATION
MONEE, IL
60449

FORM NO. COMMONNA 02/09 PAGE   2 LAST      ISSUED 01/06/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend. WI 53095

COMMERCIAL LINES POLICY DECLARATION

POLICY NUMBER CPB 0576288 12

RENEWAL

INSURED NAME: IROQUOIS PAVING CORP

FORMS SCHEDULE

| NUMBER | | DESCRIPTION |
|--------|--------|-------------|
| WB214A | 03/09 | MEMBERSHIP AND VOTING NOTICE |
| WB492 | 09/09 | NOTICE OF PAYMENT PLAN OPTIONS |
| WB1187 | 03/12 | IMPORTANT NOTICE - ILLINOIS CIVIL UNION ACT |
| IL0985Z | 01/08 | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |

FORM NO. COFORMSINV 02/09                    ISSUED 01/06/2014

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095


COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATION

POLICY NUMBER CPB 0576288 12
                              RENEWAL


INSURED NAME: IROQUOIS PAVING CORP

AUDIT FREQUENCY: ANNUAL                 THE INSURED IS CORPS, PTNR, LLC

LIMITS OF INSURANCE:
GENERAL AGGREGATE LIMIT
   (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)     $2,000,000
PRODUCTS - COMPLETED OPERATIONS AGGREGATE LIMIT     $2,000,000
EACH OCCURRENCE LIMIT                               $1,000,000
MEDICAL EXPENSE LIMIT, ANY ONE PERSON                 $10,000
DAMAGE TO PREMISES RENTED TO YOU LIMIT               $200,000
PERSONAL AND ADVERTISING INJURY LIABILITY LIMIT     $1,000,000


DEDUCTIBLE  $   1000  (FORM CG 03 00) APPLICABLE TO PROPERTY DAMAGE CLAIMS.

SEE ATTACHED SCHEDULE FOR FORMS AND ENDORSEMENTS APPLICABLE
TO THIS COVERAGE PART


FORM NO. CGL COV  02/09               ISSUED 01/06/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO.  0110053479

R   132

COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE

POLICY NUMBER CPB 0576288 12
                              RENEWAL


INSURED NAME: IROQUOIS PAVING CORP

                              TOTAL PREMIUM:      $143,857.00

                COMMERCIAL GENERAL LIABILITY CLASSIFICATIONS


| LOC  ST TER CODE | PREMIUM BASIS | PER | RATE | PREMIUM COV |
|---|---|---|---|---|
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $10 O |
| CG2034-ADDITIONAL INSURED | | | | |
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $5,005 O |
| WB1482-ADDITIONAL INSURED-CONTRACTOR'S BLANKET | | | | |
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $2,084 O |
| DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT | | | | |
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $50 O |
| PLUS PAK INCLUDING VOLUNTARY PD-$2,500/2,500 LIMIT-$250 DED | | | | |
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $250 O |
| WB2030-ADDITIONAL INSURED | | | | |
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $150 O |
| CG2010X-ADDITIONAL INSURED | | | | |
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $2,000 O |
| CG2427-LIMITED CONTRACTUAL LIABILITY-RAILROADS | | | | |


COV P IS FOR PRODUCTS-COMPLETED OPERATIONS, AND COV O IS FOR ALL OTHER HAZARDS.

FORM NO. GL SCHED 02/09  PAGE   1 CONTINUED ISSUED 01/06/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

## COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE

POLICY NUMBER CPB 0576288 12

                         RENEWAL


INSURED NAME: IROQUOIS PAVING CORP

### COMMERCIAL GENERAL LIABILITY CLASSIFICATIONS

| LOC ST TER CODE | PREMIUM BASIS | PER | RATE | PREMIUM COV |
|---|---|---|---|---|
| 1 IL 514 11111 | IF ANY | FLAT | CHARGE | $25 O |
| CG2028-ADDITIONAL INSURED | | | | |
| 1 IL 514 49451 | 10 ACRES | 1 | $0.551 | $6 O* |
| VACANT LAND LOCATED IN BUCKLEY, IL | | | | |
| INCLUDING PRODUCTS-COMPLETED OPERATIONS. | | | | |
| 1 IL 514 49451 | 11 ACRES | 1 | $0.551 | $6 O* |
| VACANT LAND LOCATED IN WATSEKA, IL | | | | |
| INCLUDING PRODUCTS-COMPLETED OPERATIONS. | | | | |
| 1 IL 514 49451 | 15 ACRES | 1 | $0.551 | $8 O* |
| VACANT LAND LOCATED IN OPPYVILLE, IL | | | | |
| INCLUDING PRODUCTS-COMPLETED OPERATIONS. | | | | |
| 1 IL 514 51241 | 8,651,622 GROSS SALES | 1000 | $1.953 | $16,897 O* |
| ASPHALT WORKS | | | $1.146 | $9,915 P* |
| 1 IL 514 51809 | IF ANY GROSS SALES | 1000 | $0.551 | $0 O* |
| CEMENT OR PLASTER MFG. - BULK | | | $0.323 | $0 P* |
| 1 IL 514 91580 | 89,409 PAYROLL | 1000 | $18.093 | $1,618 O* |
| CONTRACTORS-EXECUTIVE SUPERVISORS OR SUPERINTENDENTS | | | | |
| INCLUDING PRODUCTS-COMPLETED OPERATIONS. | | | | |

COV P IS FOR PRODUCTS-COMPLETED OPERATIONS, AND COV O IS FOR ALL OTHER HAZARDS.

(*) DEDUCTIBLE APPLIES - PER CLAIM

FORM NO. GL SCHED 02/09   PAGE   2 CONTINUED ISSUED 01/06/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE

POLICY NUMBER CPB 0576288 12
RENEWAL

INSURED NAME: IROQUOIS PAVING CORP

COMMERCIAL GENERAL LIABILITY CLASSIFICATIONS

| LOC | ST | TER | CODE | PREMIUM BASIS | PER | RATE | PREMIUM | COV |
|-----|----|-----|------|---------------|-----|------|---------|-----|
| 1 | IL | 514 | 91581 | 5,965,442 TOTAL COST | 1000 | $2.912 | $17,371 | O* |
| | | | | CONTRACTORS-SUBCONTRACTED WORK-IN CONNECTION WITH | | $1.697 | $10,123 | P* |
| | | | | CONSTRUCTION,RECONSTRUCTION,ERECTION OR REPAIR-NOT | | | | |
| | | | | BUILDINGS | | | | |
| 1 | IL | 514 | 91590 | 763,289 PAYROLL | 1000 | $9.993 | $7,628 | O* |
| | | | | CONTRACTORS PERMANENT YARDS,MAINTENANCE OR STORAGE | | | | |
| | | | | OF EQUIPMENT OR MATERIAL | | | | |
| | | | | INCLUDING PRODUCTS-COMPLETED OPERATIONS. | | | | |
| 1 | IL | 514 | 92100 | IF ANY | FLAT | CHARGE | $371 | O* |
| | | | | EMPLOYEE BENEFIT LIABILITY-CG0435 APPLIES | | | | |
| 1 | IL | 514 | 92215 | IF ANY PAYROLL | 1000 | $5.804 | $0 | O* |
| | | | | DRIVEWAY, PARKING AREA, OR SIDEWALK - PAVING OR | | $2.524 | $0 | P* |
| | | | | REPAVING | | | | |
| 1 | IL | 514 | 94007 | IF ANY PAYROLL | 1000 | $26.167 | $0 | O* |
| | | | | EXCAVATION NOC | | $8.114 | $0 | P* |
| 1 | IL | 514 | 99315 | IF ANY PAYROLL | 1000 | $24.495 | $0 | O* |
| | | | | STREET OR ROAD CONSTRUCTION OR RECONSTRUCTION | | $2.500 | $0 | P* |
| 1 | IL | 514 | 99321 | 2,484,162 PAYROLL | 1000 | $23.708 | $58,894 | O* |
| | | | | STREET OR ROAD PAVING OR REPAVING,SURFACING OR | | $3.577 | $8,886 | P* |
| | | | | RESURFACING OR SCRAPING | | | | |

COV P IS FOR PRODUCTS-COMPLETED OPERATIONS, AND COV O IS FOR ALL OTHER HAZARDS.

(*) DEDUCTIBLE APPLIES - PER CLAIM

FORM NO. GL SCHED 02/09   PAGE   3 CONTINUED ISSUED 01/06/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

### COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE

POLICY NUMBER CPB 0576288 12
                         RENEWAL


INSURED NAME: IROQUOIS PAVING CORP

#### COMMERCIAL GENERAL LIABILITY CLASSIFICATIONS


| LOC | ST | TER | CODE | PREMIUM BASIS | PER | RATE | PREMIUM | COV |
|-----|----|-----|------|---------------|-----|------|---------|-----|
| 6 | IL | 509 | 51241 | 666,644 GROSS SALES | 1000 | $2.672 | $1,781 | O* |
| ASPHALT WORKS | | | | | | $1.146 | $764 | P* |
| 7 | IL | 514 | 49451 | 15 ACRES | 1 | $0.551 | $8 | O* |

VACANT LAND - OTHER THAN NOT-FOR-PROFIT - 14.85 ACRES
INCLUDING PRODUCTS-COMPLETED OPERATIONS.

| 8 | IL | 514 | 49451 | 2 ACRES | 1 | $0.551 | $1 | O* |

VACANT LAND - OTHER THAN NOT-FOR-PROFIT
INCLUDING PRODUCTS-COMPLETED OPERATIONS.

| 9 | IL | 514 | 49451 | 11 ACRES | 1 | $0.551 | $6 | O* |

VACANT LAND - OTHER THAN NOT-FOR-PROFIT - 10.67 ACRES
INCLUDING PRODUCTS-COMPLETED OPERATIONS.

                        TERRORISM RISK INSURANCE ACT OF 2002        $0


COV P IS FOR PRODUCTS-COMPLETED OPERATIONS, AND COV O IS FOR ALL OTHER HAZARDS.

(*) DEDUCTIBLE APPLIES - PER CLAIM


FORM NO. GL SCHED 02/09  PAGE   4 LAST      ISSUED 01/06/2014

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

POLICY NUMBER CPB 0576288 12

RENEWAL

INSURED NAME: IROQUOIS PAVING CORP

ADDITIONAL INTEREST

VARIOUS LOCATIONS
DEERE CREDIT, INC
ISAOA
22408 NETWORK PL
CHICAGO, IL
60673
FORM CG2028 APPLIES
LESSOR OF LEASED EQUIPMENT
*ADDITIONAL INSURED

VARIOUS LOCATIONS
CSX TRANSPORTATION RISK
MANAGEMENT
500 WATER ST
JACKSONVILLE, FL
32202
FORM CG2010X APPLIES
OWNERS, LESSEES OR CONTRACTORS
*ADDITIONAL INSURED

LOCATION 0006
6605 STEGER ROAD BLDG CORP
COMMERCIAL CONSTRUCTION, INC
7048 W STEGER RD
FRANKFORT, IL
60423
FORM CG2011 APPLIES
MANAGERS OR LESSORS OF PREMISE
*ADDITIONAL INSURED

FORM NO. ADDINT 02/09    PAGE   1 LAST       ISSUED 01/06/2014

**WEST BEND**
A MUTUAL INSURANCE COMPANY™

West Bend Mutual Insurance Company
1900 S. 18th Avenue | West Bend, WI 53095

CUSTOMER NO. 0110053479

R    132

GENERAL LIABILITY DECLARATION

POLICY NUMBER CPB 0576288 12

RENEWAL

INSURED NAME: IROQUOIS PAVING CORP

FORMS SCHEDULE

| NUMBER | | DESCRIPTION |
|--------|-------|-------------|
| WB144L | 10/99 | VOLUNTARY PROPERTY DAMAGE COVERAGE |
| WB1482 | 06/06 | ADDITIONAL INSURED-CONTRACTOR'S BLANKET |
| CG2034 | 07/04 | AI-LESSOR OF LEASED EQP-AUTOMATIC STATUS WHEN REQ/LEASE |
| CG2028 | 07/04 | ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT |
| WB2030 | 01/06 | ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS |
| WB2000 | 07/08 | PLUS PAK - LIABILITY |
| CG2425Z | 12/04 | LIMITED FUNGI OR BACTERIA COVERAGE |
| CG2503 | 05/09 | DESIGNATED CONSTR PROJECT(S) GENERAL AGGREGATE LIMIT |
| CG2404 | 05/09 | WAIVER OF TRANSFER RIGHTS OF RECOVERY AGAINST OTHERS |
| CG0300 | 01/96 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2011 | 01/96 | ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES |
| CG2427 | 03/05 | LIMITED CONTRACTUAL LIABILITY - RAILROADS |
| CG2010X | 07/04 | ADD'L INS-OWNERS,LESSEES OR CONTR-SCHED PERSON OR ORG |
| CG2173 | 01/08 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| CG2150Z | 09/89 | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| CG0001 | 12/07 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0200 | 12/07 | ILLINOIS CHANGES-CANCELLATION AND NONRENEWAL |
| CG2147 | 12/07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| IL0162 | 09/08 | ILLINOIS CHANGES-DEFENSE COSTS |
| IL0021 | 09/08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD) |
| WB660 | 01/09 | TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US |
| WB1468 | 01/09 | EXCLUSION-ASBESTOS OR ASBESTOS PRODUCTS |
| CG0068 | 05/09 | REC AND DISTR MATERIAL OR INFO IN VIOLATION OF LAW EXCL |
| IL0147Z | 09/11 | ILLINOIS CHANGES-CIVIL UNION |
| CG0435 | 12/07 | EMPLOYEE BENEFITS LIABILITY COVERAGE |

FORM NO. GLFORMSINV 02/09                    ISSUED 01/06/2014

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

```
                                          EACH EMPLOYEE
COVERAGE                  LIMIT OF INSURANCE    DEDUCTIBLE      PREMIUM
EMPLOYEE BENEFITS PROGRAMS  $  1,000,000  EACH     $1,000         INCL
                                          EMPLOYEE
                          $  1,000,000  AGGREGATE
RETROACTIVE DATE:   05/01/1994
```

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to damages only if:

   **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

   **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

   **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

   **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

   **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

**CG 04 35 12 07**                    © ISO Properties, Inc., 2006                    **Page 1 of 6**

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

 © ISO Properties, Inc., 2006

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

**a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those damages; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

**d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

 © ISO Properties, Inc., 2006

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

 © ISO Properties, Inc., 2006 **CG 04 35 12 07**

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

    **a.** This endorsement is canceled or not renewed; or

    **b.** We renew or replace this endorsement with insurance that:

        **(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

        **(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

    **a.** The "employee benefit programs" insured;

    **b.** Previous types and amounts of insurance;

    **c.** Limits of insurance available under this endorsement for future payment of damages; and

    **d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

    **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    **b.** Handling records in connection with the "employee benefit program"; or

    **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

  **a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

  **b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

  **c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

  **d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

  **e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

  **5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

  **18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

 © ISO Properties, Inc., 2006 **CG 04 35 12 07**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

NAME OF PERSON OR ORGANIZATION:
 ANY PARTY WITH WHOM THE INSURED AGREES TO WAIVE SUBROGATION IN A WRITTEN
 CONTRACT.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED FUNGI OR BACTERIA COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

```
FUNGI AND BACTERIA LIABILITY

EACH OCCURRENCE LIMIT        $     50,000
AGGREGATE LIMIT              $    100,000
```

**Coverage under this endorsement is subject to the Fungi and Bacteria Each Occurrence and Aggregate Limits shown in the schedule.  Our obligation to pay any claim or judgment, or to defend any suit, ends after these limits have been exhausted by payment of judgments or settlements, or after we have offered for settlement our limit of liability.**

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **a.** "Personal and advertising injury" arising out of a "fungi or bacteria incident".

    **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**B.** Coverage provided by this insurance for "bodily injury" or "property damage", arising out of a "fungi or bacteria incident", is subject to the Fungi and Bacteria Liability Each Occurrence and Aggregate Limit as described in Paragraph **C.** of this endorsement. This provision **B.** does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**C.** The following are added to **Section III – Limits of Insurance:**

**1.** Subject to Paragraphs **2.** and **3.** of Section **III** – Limits of Insurance, as applicable, the Fungi and Bacteria Liability Aggregate Limit shown in the Schedule of this endorsement is the most we will pay under Coverage **A** for all "bodily injury" or "property damage" and Coverage **C.** for Medical Payments arising out of one or more "fungi or bacteria incidents". This provision **C.1.** does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**2.** Subject to Paragraph **C.1.** of this endorsement and Paragraph **5.** Of Section **III** - Limits of Insurance, as applicable, the Fungi and Bacteria Each Occurrence Limit is the most we will pay under Coverage **A.** for "bodily injury" or "property damage" and Coverage **C.** for medical payments arising out of a "fungi or bacteria incident".  This provision **C.2.** does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**3.** Paragraph **6.,** the Damage To Premises Rented To You Limit, and Paragraph **7.,** the Medical Expense Limit, of Section **III** - Limits of Insurance continue to apply to "bodily injury" or "property damage" arising out of a "fungi or bacteria incident".

Contains material copyrighted by ISO, with its permission.

**D.** The following definitions are added to the **Definitions** Section:

**1.** "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**2.** "Fungi or bacteria incident" means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

Contains material copyrighted by ISO, with its permission.
West Bend Mutual Insurance Company
West Bend, Wisconsin 53095

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

```
SCHEDULED RAILROAD:
CSX TRANSPORTATION - RISK MANAGEMENT(J-907)



DESIGNATED JOB SITE:
FAS 1345(CH11) WELLINGTON, IL
OVERLAY OF A 22' WIDE ROADWAY INCLUDING HMA SURFACE COURSE, HIR SURFACE
RECYCLING AND ALL WORK NECESSARY TO COMPLETE PROJECT ACCORDING TO PLANS AND
SPECIFICATIONS
```

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the **Definitions** Section is replaced by the following:

**9.** "Insured Contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

    **(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

```
SCHEDULED RAILROAD:
WISCONSIN CENTRAL LTD AND ITS PARENTS



DESIGNATED JOB SITE:
FAP ROUTE 330 (US 45) SECTION104-RS-10, WILL COUNTY DISTRICT 1 CONTRACT
NUMBER 60N32
2.61 MILES OF PAVEMENT REHABILIATION ON US 45 (LA GRANGE RD) FROM SAGER RD TO
STUENKEL RD
```

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the definition of "insured contract" in the **Definitions** Section is replaced by the following:

**9.** "Insured Contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(1)** above and supervisory, inspection, architectural or engineering activities.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

DESIGNATED CONSTRUCTION PROJECTS:

YOUR PROJECTS AWAY FROM PREMISES OWNED BY OR RENTED TO YOU.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A,** and for all medical expenses caused by accidents under Section **I** – Coverage **C,** which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

  **1.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

  **2.** Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

NAME OF ADDITIONAL INSURED PERSON(S) OR ORGANIZATION(S):

WISCONSIN CENTRAL LTD AND ITS PARENTS
17641 S ASHLAND AVE
HOMEWOOD, IL 60430

LOCATION(S) OF COVERED OPERATIONS:

PAVING WORK

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured.

If the name of the person or organization stated above includes any architect, engineer or surveyor, the following applies:

The insurance with respect to such architects, engineers, or surveyors does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**a.** The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

**b.** Supervisory, inspection, or engineering services.

If a written contract between you and the additional insured specifically requires that this insurance be primary, then the insurance afforded by this endorsement is primary insurance and we will not seek contribution from any other insurance available to the additional insured named in this schedule unless the other insurance is provided by a contractor other than the named insured.  Then we will share with that other insurance by the method described below.

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

If no contract between you and the additional insured requires that this insurance be primary, then the coverage granted to the additional insured under this endorsement shall be excess over any other valid and collectible insurance.

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

---

**Terrorism Premium (Certified Acts) $**

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

If you have previously rejected coverage under this policy for Certified Acts of Terrorism under the Terrorism Risk Insurance Act, Coverage will remain excluded unless you request coverage within 30 days of the policy effective date.

**Additional information, if any, concerning the terrorism premium:**

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Contains material copyrighted by ISO, with its permission.
West Bend Mutual Insurance Company
West Bend, Wisconsin 53095

# MEMBERSHIP AND VOTING NOTICE

**MUTUALS – MEMBERSHIP AND VOTING NOTICE**

The named insured is notified that by virtue of this policy, the named insured is a member of the West Bend Mutual Insurance Company of West Bend, Wisconsin and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, on the second Tuesday of March commencing in 2007 and each year thereafter, at 10:00 a.m.

**MUTUALS – PARTICIPATION CLAUSE WITH CONTINGENT LIABILITY**

No Contingent Liability: This policy is nonassessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

James J. Pauly
Secretary

Kevin A. Steiner
President and Chief Executive Officer

**West Bend Mutual Insurance Company**
**1900 S. 18th Avenue**
**West Bend, WI  53095**
**800-236-5010**

# NOTICE OF PAYMENT PLAN OPTIONS

West Bend Mutual Insurance Company offers several payment plan options.  The various payment plans are described below.

**1.** Annual premium of $125 or more.

    **a.** Semiannual.

        **(1)** First payment of 50 percent of total premium plus a $7.00 installment fee due at inception.

        **(2)** Second payment of 50 percent of total premium plus a $7.00 installment fee due in six months.

    **b.** Quarterly.

        **(1)** First payment of 25 percent of total premium plus a $7.00 installment fee due at inception.

        **(2)** Second payment of 25 percent of total premium plus a $7.00 installment fee due in three months.

        **(3)** Third payment of 25 percent of total premium plus a $7.00 installment fee due in six months.

        **(4)** Fourth payment of 25 percent of total premium plus a $7.00 installment fee due in nine months.

    **c.** Down payment plus five.

        **(1)** Down payment of 25 percent of total premium plus a $7.00 installment fee due at inception.

        **(2)** Remaining five monthly payments of 15 percent of total premium plus a $7.00 installment fee on each installment.

    **d.** Down payment plus nine.

        **(1)** Down payment of 25 percent of total premium plus a $7.00 installment fee due at inception.

        **(2)** Remaining nine monthly payments of 8.333 percent of total premium plus a $7.00 installment fee on each installment.

    **e.** In addition, the following payment plans are available. The down payment for each of these plans is the first installment plus a $7.00 installment fee.

        **(1)** 10 equal payments plus a $7.00 installment fee on each installment.

        **(2)** 11 equal payments plus a $7.00 installment fee on each installment.

        **(3)** 12 equal payments plus a $7.00 installment fee on each installment.

**2.** Electronic Funds Transfer (EFT).  Monthly equal installments equivalent to the number of months in the policy term plus a $1.00 installment fee on each installment.  Down payment will be applied to the first installment.

**3.** Credit Card.  You can charge your entire account balance on VISA, MasterCard, Discover, or American Express.

PLEASE NOTE:

If a payment is returned from the financial institution, an extra fee of $25.00 will be required before reinstatement.

If you have any questions about these payment plans or want to utilize one of them, please contact your agent or West Bend Mutual Insurance Company.

If you send in your check for one of these plans other than what you were billed for, please send a memo along with your check stating what payment plan is desired.

# IMPORTANT NOTICE
# ILLINOIS CIVIL UNION ACT

The Illinois Department of Insurance requires that we advise you of the following:

The Illinois Religious Freedom Protection and Civil Union Act, Public Act 096-1513, effective June 1, 2011, provides that "a party to a civil union is entitled to the same legal obligations, responsibilities, protections, and benefits as are afforded or recognized by the law of Illinois to spouses." For purposes of the law, a "civil union" means a legal relationship between two persons of either the same or opposite sex.

If you would like more information about the rights provided by this Act, call the Department of Insurance toll-free at (866)445-5364 or visit their website at http://www.insurance.illinois.gov.

Your commercial lines policies comply with this Act. Please contact your agent or customer service representative shown on your policy Declaration with any questions about how it impacts your policy.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

  **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

  **a. Knowing Violation Of Rights Of Another**

  "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

  **b. Material Published With Knowledge Of Falsity**

  "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

  **c. Material Published Prior To Policy Period**

  "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

  **d. Criminal Acts**

  "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

  **e. Contractual Liability**

  "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

  **f. Breach Of Contract**

  "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

  **g. Quality Or Performance Of Goods – Failure To Conform To Statements**

  "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

  **h. Wrong Description Of Prices**

  "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

  **i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

  "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

  However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

  **j. Insureds In Media And Internet Type Businesses**

  "Personal and advertising injury" committed by an insured whose business is:

    **(1)** Advertising, broadcasting, publishing or telecasting;

    **(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

© ISO Properties, Inc., 2006

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

 © ISO Properties, Inc., 2006

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

 © ISO Properties, Inc., 2006

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

  **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

  **a.** The statements in the Declarations are accurate and complete;

  **b.** Those statements are based upon representations you made to us; and

  **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

  **a.** As if each Named Insured were the only Named Insured; and

  **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

  **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

  **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

 © ISO Properties, Inc., 2006

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2006

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2006 **CG 00 01 12 07**

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

    **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

    **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

        **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

        **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

**3.** If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

    **a.** Nonpayment of premium;

    **b.** The policy was obtained through a material misrepresentation;

    **c.** Any insured has violated any of the terms and conditions of the policy;

    **d.** The risk originally accepted has measurably increased;

    **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

    **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM   or | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

**1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

**a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

**b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

**c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

**(1)** "Bodily injury";

**(2)** "Property damage"; or

**(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

**1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Additional Insured Person(s) Or Organization(s):**

**Location(s) of Covered Operations:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.  There is no coverage for the additional insured for "bodily injury", "property damage" or "personal and advertising injury" arising out of the sole negligence of the additional insured or by those acting on behalf of the additional insured.

If the name of the person or organization stated above includes any architect, engineer or surveyor, the following applies:

The insurance with respect to such architects, engineers, or surveyors does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**a.** The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

**b.** Supervisory, inspection, or engineering services.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

If a written contract between you and the additional insured specifically requires that this insurance be primary, then the insurance afforded by this endorsement is primary insurance and we will not seek contribution from any other insurance available to the additional insured named in this schedule unless the other insurance is provided by a contractor other than the named insured.  Then we will share with that other insurance by the method described below.

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

If no contract between you and the additional insured requires that this insurance be primary, then the coverage granted to the additional insured under this endorsement shall be excess over any other valid and collectible insurance.

Copyright, Insurance Services Office, Inc.,  1996

West Bend Mutual Insurance Company      **CG 20 10 X 07 04**
West Bend, Wisconsin 53095

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**1.** Designation of Premises (Part Leased to You):

**2.** Name of Person or Organization (Additional Insured):

**3.** Additional Premium:

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section **II**) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
|  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Who Is An Insured (Section II)** is amended to include as an additional insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

**c.** "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

**(a)** Requires a license; or

**(b)** Is for the purpose of financial gain or livelihood.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 ☐

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
GARAGE LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part and Garage Liability Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

  **1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

  **2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

West Bend Mutual Insurance Company
West Bend, Wisconsin 53095
Contains material copyrighted by ISO, with its permission.
© Insurance Services Office, Inc., 2011

IL 01 47 Z 09 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

  **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Employment-Related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts and the Farm Umbrella Liability Policy;

  **2.** Section **II** – Liability Coverage in Paragraph **A.** Coverage under the Business Auto, Garage, Motor Carrier and Truckers Coverage Forms;

  **3.** Section **A.** Coverage under the Legal Liability Coverage Form; and

  **4.** Coverage **C** – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# VOLUNTARY PROPERTY DAMAGE COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| COVERAGE | LIMITS OF LIABILITY | DEDUCTIBLE |
|----------|---------------------|------------|
| Property Damage | $ _____ Each Occurrence | $ _____ Each Claim |
| | $ _____ Aggregate | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Unless specifically modified or deleted, all exclusions listed in COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY section of the COMMERCIAL GENERAL LIABILITY COVERAGE apply to the coverage provided by this endorsement.

**1. Insuring Agreement.**

We will pay, at the request of the insured, for "property damage" to property of others in the insured's care, custody or control.  The "property damage" must be caused by an "occurrence" and result from operations which take place away from any premises the insured rents, owns or occupies and which are a part of your business.  That business must be afforded coverage under the Commercial General Liability Policy to which this endorsement is attached.

However, we shall have no duty whatsoever to defend claims and/or lawsuits for which the only coverage provided is under this endorsement.

**2. Exclusion.**

This insurance does not apply to "property damage" caused by or arising out of work performed for you or on your behalf by a subcontractor.

**3. Limits of Insurance.**

**a.** The Limits of Insurance shown in the Schedule above and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** Claims made or "suits" brought; or

**(3)** Persons or organizations making claims or bringing "suits".

**b.** The Aggregate Limit is the most we will pay for the sum of all damages under this endorsement;

**c.** Subject to b. above, the Each Occurrence Limit is the most we will pay because of all "property damage" arising out of any one "occurrence".

The limits of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**4. Deductible.**

We will not pay for loss or damage for any claim until the amount of loss or damage exceeds the Deductible shown in the Declarations.  We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Liability.

The terms of this insurance apply irrespective of the application of the deductible amount.

We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

5. **Condition.**

   **Additional Duties In The Event Of An Occurrence, Claim or Suit.**

   In the event of loss, at our request you shall replace the property or furnish the labor and materials necessary for repairs at your actual cost, excluding any profit or overhead charges.  Any property so paid for or replaced shall become our property.  Payment under this endorsement shall not constitute an admission of liability of the insured or, except for this endorsement, us.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE FORM

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy.  This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS OR ASBESTOS PRODUCTS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
GARAGE COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

This insurance does not apply to:

"Bodily injury" or "property damage" arising out of the removal, manufacture, distribution, sale, installation, handling or disposal of asbestos or any product containing asbestos material.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – CONTRACTOR'S BLANKET

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. WHO IS AN INSURED (Section II)** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.

The written contract or written agreement must be:

**1.** Currently in effect or becoming effective during the term of this policy; and

**2.** Executed prior to the "bodily injury," "property damage," "personal injury and advertising injury."

**B.** The insurance provided to the additional insured is limited as follows:

**1.** That person or organization is only an additional insured with respect to liability arising out of:

**a.** Your premises;

**b.** "Your work" for that additional insured; or

**c.** Acts or omissions of the additional insured in connection with the general supervision of "your work."

**2.** The Limits of Insurance applicable to the additional insured are those specified in the written contract or written agreement or in the Declarations for this policy, whichever is less. These Limits of Insurance are inclusive and not in addition to the Limits of Insurance shown in the Declarations.

**3.** Except when required by written contract or written agreement, the coverage provided to the additional insured by this endorsement does not apply to:

**a.** "Bodily injury" or "property damage" occurring after:

**(1)** All work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

**b.** "Bodily injury" or "property damage" arising out of acts or omissions of the additional insured other than in connection with the general supervision of "your work."

**4.** The insurance provided to the additional insured does not apply to "bodily injury," "property damage," "personal injury and advertising injury" arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including;

**a.** The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

**b.** Supervisory, or inspection activities performed as part of any related architectural or engineering activities.

**C.** As respects the coverage provided under this endorsement, Paragraph **4.b. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended with the addition of the following:

**4. Other insurance**

    **b.** Excess insurance

        This insurance is excess over:

        Any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a written contract specifically requires that this insurance be either primary or primary and noncontributing. Where required by written contract, we will consider any other insurance maintained by the additional insured for injury or damage covered by this endorsement to be excess and noncontributing with this insurance.

        When this insurance is excess, as a condition of coverage, the additional insured shall be obligated to tender the defense and indemnity of every claim or suit to all other insurers that may provide coverage to the additional insured, whether on a contingent, excess or primary basis.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PLUS PAK – LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE FORM

**A.** The following is added to the **Employers Liability** exclusion:

**Stop Gap Liability**

This exclusion does not apply to "bodily injury" to an "employee" of the insured arising out of and in the course of employment by the insured, provided such "employee" is reported and declared under the Workers' Compensation Fund of the State(s) of North Dakota, Ohio, Washington, or Wyoming, whichever is applicable as respects such injured "employee".

The insurance provided by this coverage extension does not apply to:

**1.** Punitive or exemplary damage because of "bodily injury" to an "employee" employed in violation of law;

**2.** "Bodily injury" to an "employee" while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

**3.** Damages arising out of the discharge of, coercion of, or discrimination against any "employee" in violation of law.

**B.** The following applies to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM:

**1.** Exclusion **g.(2)(a)** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by:

   **a.** less than 50 feet long; and

**2.** Paragraph **1.b.** of **Supplementary Payments – Coverages A And B** is replaced by:

   **b.** Up to $500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies.  We do not have to furnish these bonds.

**3.** Paragraph **f. Knowledge of Occurrence, Claim or Suit** is added to **Insuring Agreement of Section I - Coverage A. Bodily Injury And Property Damage Liability:**

   **f.** Knowledge that "Bodily Injury" or "Property Damage" has occurred or knowledge of a claim or suit by an agent or employee of any insured shall not in itself constitute knowledge of the insured unless your partners, executive officers, directors, managers, members or a person, who has been designated by them to receive reports of occurrences, offenses, claims or suits shall have received such notice from the agent or employee.

**4.** Paragraph **3.a. of Section II Who Is An Insured** is replaced by:

   **a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**5.** Paragraph **10. Unintentional Failure to Disclose Hazards** is added to **Section IV Commercial General Liability Conditions.**

   **10.** Based on our dependence upon your representation as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject liability coverage under this policy based solely on such failure.

**6.** Paragraph **3. "Bodily Injury"** under **Section V. Definitions** is replaced by:

   **3.** "Bodily Injury" means bodily injury, sickness or disease sustained by a person.  This includes mental anguish or death resulting from bodily injury, sickness or disease.

# EXHIBIT C

04/30/2014  16:19  (FAX)  P.001/001

**IROQUOIS PAVING CORPORATION (IPC)**
**Corporate Office**
1889 E. US Hwy 24 / P.O. Box 466
Watseka, IL 60970
(815) 432-5211  Office
(815) 432-5234  Fax

**INTERSTATE ASPHALT**
*(a division of IPC)*
Gilman IL – Monee IL
(708) 534-8667    Monee Office
(708) 534-8667    Monee Fax
(708) 534-2896    Toll Free Fax

| TO: | Rick Theesfeld | COMP: | City of Gilman |
|---|---|---|---|
| FAX #: | 265-4640 | # OF PAGES: | 1 |
| FROM: | Bruce Fuoss | DATE: | 4/30/14 |

NOTES:  By your signature below,
City of Gilman Authorizes
Iroquois Paving Corporation to
perform work for sanitary replacement
on East Second St. between Maple
& 790 E Road (Iroquois West
High School entrance) on a time
and material basis

_Rick Theesfeld_
City of Gilman
Authorized Representative

Thanks Rick,
Bruce

WATSEKA        GILMAN        MONEE
www.iroqpavcorp.com


EXHIBIT
A

# IMPROVEMENT PLANS FOR THE CITY OF GILMAN

# 2ND STREET SEWER REPLACEMENT PROJECT

## PROJECT INFORMATION

### OWNER

### PROJECT ADDRESS:

### SCOPE OF WORK:

### FIELD SURVEY COLLECTED BY:

## BENCHMARK SUMMARY

BENCHMARK 1:

BENCHMARK 2:

## UTILITY COMPANIES SERVING SITE:

### CALL JULIE BEFORE YOU DIG.

## SITE

**SANITARY SEWER STRUCTURE SCHEDULE**

**UTILITY CROSSING SCHEDULE**

## VICINITY MAP

**DRAWING INDEX**

| | |
|---|---|
| C1.0 | COVER PAGE |
| C1.1 | STANDARDS & SPECIFICATIONS |
| C2.0 | EXISTING TOPOGRAPHY |
| C3.0, C3.0, C3.0 | SANITARY SEWER - PLAN & PROFILE |
| C4.0 | SITE DETAILS |

## SYMBOLS & LEGEND

---



2ND STREET SEWER
REPLACEMENT PROJECT
GILMAN, ILLINOIS

CITY OF GILMAN
215 NORTH CENTRAL STREET
GILMAN, IL 60938

---

PIGGUSH ENGINEERING, INC

586 WILLIAM LATHAM DRIVE
SUITE B
BOURBONNAIS, ILLINOIS 60914
P. 815.614.3447
F. 815.614.3735

IL DESIGN FIRM LICENSE No. 184.006779

www.piggusheng.com



COVER PAGE

C1.0

tabbies
EXHIBIT
B

## SITE CONSTRUCTION NOTES

## DEMOLITION NOTES

## EXCAVATION NOTES

## EROSION CONTROL NOTES

## SANITARY SEWER SYSTEM NOTES

## WATER SYSTEM NOTES

## STORM SEWER NOTES

## PAVEMENT NOTES

| REV | ISSUED | DESCRIPTION |
|-----|--------|-------------|

**2ND STREET SEWER REPLACEMENT PROJECT**

GILMAN, ILLINOIS

**CITY OF GILMAN**
218 NORTH CENTRAL STREET
GILMAN, IL 60938

PROJECT:
ISSUED:
DRAWN BY:
CHECKED BY:



**PIGGUSH ENGINEERING, INC**

586 WILLIAM LATHAM DRIVE
SUITE B
BOURBONNAIS, ILLINOIS 60914
P. 815.614.3447
F. 815.614.3735

IL DESIGN FIRM LICENSE No. 184.006779



www.piggusheng.com

**C1.1**

STANDARDS
AND
SPECIFICATIONS







PIGGUSH ENGINEERING, INC

586 WILLIAM LATHAM DRIVE
SUITE B
BOURBONNAIS, ILLINOIS 60914
P. 815.614.3447
F. 815.614.3735

IL DESIGN FIRM LICENSE No. 184.006779



www.piggusheng.com

2ND STREET SEWER
REPLACEMENT PROJECT
GILMAN, ILLINOIS

CITY OF GILMAN
215 NORTH CENTRAL STREET
GILMAN, IL 60938

C2.0

SECOND STREET
EXISTING TOPOGRAPHY



MATCHLINE A-A
STATION 5+73

MATCHLINE A-A
STATION 5+73



**2ND STREET SEWER REPLACEMENT PROJECT**
GILMAN, ILLINOIS

**CITY OF GILMAN**
215 NORTH CENTRAL STREET
GILMAN, IL 60938

C3.0

SECOND STREET
SANITARY SEWER
PLAN & PROFILE
STA. 1+00 - 5+73



PIGGUSH ENGINEERING, INC

586 WILLIAM LATHAM DRIVE
SUITE B
BOURBONNAIS, ILLINOIS 60914
P. 815.614.3447
F. 815.614.3735

IL DESIGN FIRM LICENSE No. 184.006779

www.piggusheng.com



PIGGUSH ENGINEERING, INC

586 WILLIAM LATHAM DRIVE
SUITE B
BOURBONNAIS, ILLINOIS 60914
P. 815.614.3447
F. 815.614.3735

IL DESIGN FIRM LICENSE No. 184.006779

www.piggusheng.com





2ND STREET SEWER
REPLACEMENT PROJECT
GILMAN, ILLINOIS

CITY OF GILMAN
215 NORTH CENTRAL STREET
GILMAN, IL 60938

SECOND STREET
SANITARY SEWER
STA. 5+75 - 11+40

C3.1





2ND STREET SEWER REPLACEMENT PROJECT
GILMAN, ILLINOIS

CITY OF GILMAN



PIGGUSH ENGINEERING, INC

C4.0

SITE DETAILS